IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHEZ DOUGLAS,

    Plaintiff,

v.                                                                     CIV 02-1434 KBM/LAM

CHRIS CONDON, RANDY SPEAR,
VILLAGE OF RUIDOSO,
RUIDOSO POLICE DEPARTMENT,
PAMELA DOBBS, SCOTT KEY,
DISTRICT ATTORNEY'S OFFICE
FOR THE TWELFTH JUDICIAL DISTRICT,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

During the course of an arrest for driving while intoxicated, Plaintiff was taken to the ground twice and later, her prescription drug records were searched. She asserts that the force used to subdue her was excessive on both occasions, that the search of her records was illegal, and that the officers were not properly supervised. She brings this suit for compensatory and punitive damages under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, N.M. STAT. ANN. § 41-4-1 *et seq.* (Michie 1996 & Supp. 2002).

Originally, Plaintiff only brought suit against the four "Ruidoso" Defendants – Officers Chris Condon and Randy Spear, and the Village of Ruidoso and its police department. She was permitted to amend, and her First Amended Complaint added the prosecutor defendants along with a claim against them concerning the search of her prescriptions. *See Docs. 30, 32.* Because the Ruidoso defendants have since settled with Plaintiff, *see Doc. 56*, their motion for summary

judgment is moot. *See Doc. 33.*

The matter now before the Court on the Prosecutor Defendants' ("Defendants") motion for summary judgment, *Doc. 50,* and Plaintiff's motion for sanctions seeking relief which, in essence, would result in judgment in her favor, *Doc. 52.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 2, 10, 47.*

### I. Sanctions Are Not Warranted

Plaintiff argues that because the Defendants failed to timely make their initial disclosures under FED. R. CIV. P. 26, they should not be permitted to use any evidence from the sources disclosed or permitted to raise any affirmative defense. Even though the disclosures were technically late, and I do not countenance such failures, I find Plaintiff's argument frivolous for the reasons stated in Defendants' response. *See Doc. 57.* I underscore that, given the procedural posture of this case, there is an utter lack of showing of bad faith or prejudice. Furthermore, there is no assertion that the tardy initial disclosures in any way hampered Plaintiff from preparing her response to the pending summary judgment motion.

### II. Summary Judgment Will Issue In Favor Of The Prosecutor Defendants

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177,

179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action.". . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Having carefully reviewed the parties' submissions and relevant authorities, I am satisfied that summary judgment should enter in favor of Defendants for the reasons stated in their briefs and incorporate those arguments and authorities herein by reference. *See Docs. 51, 60.* To that, I add a few observations.

Plaintiff seeks to hold the prosecutors liable for the "order to produce prescription information." The order was issued by a judge upon the officer's sworn statement that Plaintiff's doctor in Ruidoso contacted the officer on January 18, 2001. At that time, the physician, Dr. Robinson, "advis[ed] that [Plaintiff] has been in his office several times seeking pain medication, and that [she] is also seeing a doctor in Roswell."[1] *Doc. 51,* Exh. 4. The officer further stated that "reasonable suspicion exists for the issuance of this motion and order to produce prescription information in order to prove or disprove any involvement of [Ms. Douglas] in obtaining controlled substances by fraud or misrepresentation." *Id.*

I recognize that the supporting depositions from the doctor and officer contradict the implication

---

[1]

that the doctor sought out the officer. To the contrary, it appears that the officer initiated the contact with the doctor. *See, e.g., Doc. 51,* Exh. 1 at 5-7. Dr. Robinson testified in his deposition that Officer Spear, while investigating another of his patients, asked Dr. Robinson "if I had any concerns about patients that might have forged one of my prescriptions." *Id.* at 5. In response, Dr Robinson gave the officer Plaintiff's name "and maybe an address or telephone number. . . ." *Id.* at 6.

Thus, prior to this contact the doctor had become suspicious that Ms. Douglas was abusing narcotics. Dr. Robinson knew that Plaintiff had been going through prescriptions quickly and had sought prescription medications from other doctors that she had not revealed to him. The doctor documented those observations in the medical records, and these concerns were later related to the officer. *See id.* at 14-17, 18-21. With this information at hand, the officer then drafted the motion and order, submitted it to a prosecutor for review, and upon approval, took the motion to the judge. *See Doc. 58,* Exh. A at 6-9, 22-24, 37-40.

The fact that the first doctor interviewed did not specifically use the legal terms "fraud" and "misrepresentation" is also immaterial. It is plain that the doctor suspected Plaintiff of substance abuse and engaging in drug seeking behavior to gain access to more than what any individual doctor had prescribed.

Undoubtedly, the affidavit in support of the order could have been more precise. Nevertheless, the officer was apparently aware that Plaintiff was using two different names when he spoke to the first doctor. The use of an alias, coupled with the first doctor's suspicion of substance abuse and drug seeking behavior, provided ample reasonable suspicion and/or probable cause to support the assertion of suspected prescription fraud or misrepresentation.

4

It is true that the Supreme Court has acknowledged one's "expectation of privacy" in medical information and records, including those related to prescriptions. *Whalen v. Roe*, 429 U.S. 589 (1977). Courts are divided, however, on whether that expectation falls within the zone of privacy protected by the constitution.[2] At least one court has concluded that neither a warrant based upon probable cause nor a court order based upon even reasonable suspicion is needed if a pharmacist turns over prescription records of a customer to a law enforcement officer. *See State v. Russo*, 259 Conn. 436, 790 A.2d 1132 (2002). Moreover, the *Russo* court examined a

---

[2] A relatively recent law review article discussed the conflict among the circuits.

> In 1995, the Third Circuit . . . conclude[d] that records of prescription medications are private. "An individual using prescription drugs has a right to expect that such information will customarily remain private.". . . Although the Third Circuit adopted Justice Stevens' argument, the Sixth Circuit did not follow suit. . . . [and] concluded that, "[d]isclosure of plaintiff's medical records does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution." In Ferguson v. City of Charleston, the Fourth Circuit expressly noted the division among the circuits, as follows: Although the Supreme Court addressed a claim to a right of privacy in medical records in Whalen, it declined to decide whether such information merits constitutional privacy protection. See Whalen, 429 U.S. at 605-06. And, the circuit courts of appeals are divided on this issue. Although the United States Supreme Court reversed and remanded the Fourth Circuit's decision in Ferguson, the Court did not address the division of authority noted among the circuits. Instead, it acknowledged an "expectation of privacy" in medical records, as follows, "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." The Court did not indicate whether this expectation of privacy was protected by the Constitution, as had been "argued" by Stevens in Whalen.

Joel Glover & Erin Toll, <u>The Right to Privacy of Medical Records: Balancing Competing Expectations</u>, 79 Denv. U. L. Rev. 540, 543 (2002) (citations omitted).

5

Connecticut state statute, similar to one in New Mexico,[3] that requires prescription records to be open for inspection by law enforcement officials authorized to investigate and enforce controlled substance laws. The *Russo* court

> conclude[d] that § 21a-265 authorizes law enforcement officials to obtain records of prescriptions for controlled substances from a pharmacist without a warrant, subject, of course, to consideration of the pharmacist's constitutional rights. Although, arguably, as a matter of public policy, the law enforcement officials ***should*** be required to obtain prior court approval or the prior consent of the person whose prescription records are sought before gaining access to those records, it is not this court's prerogative to adopt such a policy in the face of an unequivocal legislative mandate to the contrary.

*Id.* at 457. Here, the officer and prosecutors took the step of obtaining judicial approval before viewing the records and should be commended for that action.

Thus, I find no Fourth Amendment violation. Even if there were a violation, however, the individual prosecutors are entitled to qualified immunity as the law was not clearly established at the time of the alleged violation. Consequently, assuming Plaintiff ***had*** properly raised a municipal liability claim against the District Attorney's Office, the municipality cannot be held liable absent a constitutional violation.

---

[3] N.M. STAT. ANN. §26-1-16(C) ("It is the duty of all pharmacists to keep an accurate record of all disposals, which record shall be open to inspection by any law enforcement officer of this state."). Moreover, the state statutes apparently recognize one's expectation of privacy in the disclosure of such information and balanced it against the state's valid interest in the regulation of controlled substances in N.M. STAT. ANN. § 26-1-16(D) which provides as follows:

> No enforcement officer having knowledge by virtue of his office of any prescription, order or record shall divulge such knowledge except in connection with a prosecution or proceeding in court or before a licensing or registration board or officer, to which prosecution or proceeding the person to which such prescriptions, orders or records relate is a party.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion for summary judgment by the settling defendants *(Doc. 33)* is DENIED AS MOOT;

2. Plaintiff's motion for sanctions *(Doc. 52)* is DENIED;

3. Defendant Dobbs' and Key's motion for summary judgment *(Doc. 50)* is GRANTED; and

4. A final order granting final judgment issue concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.